Your Honors, this case does not involve constitutional issues of deliberate indifference for failure to provide medical care and the sort of arguments we just heard. It does not involve an enormous amount of money, and it's certainly not the first time that this court has been called upon, nor will it be the last, that the court is called upon to referee a fight between two insurance carriers over who should pay what when. So perhaps it does not have any unique appeal to court, but I think it's an important case nonetheless because it implicates questions of federalism. And state law has long been the governing source of law for any issue of contract interpretation. This court has recognized that repeatedly. And that's particularly true in the context of insurance policies, which are heavily regulated by the respective states. In Virginia, for example, we not only have a statutory scheme governing insurance, but a specific administrative agency, the Bureau of Insurance, that actually prescribes certain policy language that needs to be included in liability policies that are issued within the borders of the Commonwealth of Virginia. It makes sense then that the Virginia courts would be the appropriate judicial body to interpret insurance policies delivered in Virginia and to develop rules for how to resolve the type of dispute we have here, where you have two policies with conflicting other insurance provisions. With that in mind, this appeal largely boils down to the question whether Virginia would adopt the logic of the Horace Mann v. General Starr case, which was the primary, if not exclusive, basis for the district court's opinion below. Horace Mann v. General Starr was a 2008 case from the 4th Circuit forecast that West Virginia, not Virginia, but that West Virginia would follow what we've referred to as the true excess rule. And under the true excess rule, a court looks at the general insuring intent of a policy or a broad classification of an insurance policy as either primary or excess to determine which policy has a priority of coverage in any given case. We appealed the district court's decision relying on the Horace Mann case because that logic of Horace Mann cuts against decades of Virginia law. And I'll focus primarily in my comments today on that point, why Virginia would not subscribe and does not subscribe and has never subscribed to the Horace Mann rule of the true excess rule. I'll note at the outset that the true excess rule has some appeal because it is convenient and it's a shortcut to quickly resolve these issues, which can become very complex looking at the competing language in two policies. The Horace Mann true excess rule uses a broad, one-size-fits-all framework in which the court may rely on generalizations about a policy's intent rather than delving into the specific policy language as applied to the facts giving rise to a given policy. Mr. Johnson, can I ask a question? You said it has some appeal because it's convenient, but I thought part of the reason why the district court and the Horace Mann court seemed to think that this sort of looking at broader policy intent and priorities was important is because as a practical matter, there are differences, at least in terms of the risks that are being taken on by these different policies. We have a true excess policy, as I understand it. The premium is calculated accordingly because the understanding is that it is the last line of defense in terms of coverage. And then where you have a policy, at least as the district court characterized your client's policy, that has attributes of both primary liability that attaches to it along with an excess clause, that that policy would be priced accordingly to reflect the level of risk for that policy as opposed to a true excess policy. That seems to have some intuitive appeal and seems to make some sense. Why is that wrong? Your Honor, I'll answer your question in two ways. First of all, specifically with regards to the premiums charged, you're comparing apples and oranges when you look at two different policies. For instance, our homeowner's policy doesn't just cover liability. It covers Mr. Hooper's home and his property, which is a assessing a premium. Conversely, the federal policy involved in this case had an enormous premium because it was delivered as a group policy to over 90 employees of a local investment firm here in Michigan. So there's no way to really, nor was there any evidence before the district court, by the way, to make an assessment or comparison of the premiums charged. But am I remembering right that that was part of the rationale? And I think you're right. There may have not been any evidence about the particular premiums here, but that seems to be one of the policy justifications, is that in general, the risks are different. Therefore, the premiums charged are going to be different. And so it makes sense to allocate the risk accordingly. That is correct. And the district court made explicit reference to that in its opinion, which we believe was inappropriate for that reason. I think the more fundamental response to your question in this regard, as to whether policies are really trying to cover different levels of risk, it goes back to my fundamental point about Virginia law. Insurance carriers in Virginia are free to craft a policy that specifically delineates or allocates risk for different events that might occur. And you can see this in our own policy. Suppose Mr. Hooper, instead of having a fatal accident involving his operation of the boat, suppose he had accidentally discharged a firearm that led to his friend's death. Well, our policy would cover that directly and primarily. But that's one type of risk. Our policy specifically, when you look at the language in the policy, Mutual Assurance Society says, we will not cover your use of a watercraft except in very limited circumstances, including your permissive use of another's boat. And when we do that, we're only going to do it on an excess level. And I think this really gets to the crux of the issue, Your Honor. When you use broad classifications or labels about what a policy is intended to do as a whole, which is what the district court explicitly did. She looked at the general insuring intent. You lose the details that are often in the fine print that are often the important substance of any contract. And one way to conceive of that, Your Honor, is, and actually there's a quote in the district court's conclusion, and this is in the judicial appendix at page 251 and 252. And I really think it encapsulates the problem that we see under Virginia law, application of the true excess rule. This court put, the society's argument improperly focuses on discrete subsections of the policies rather than the effect of the policies as a whole, period, end quote. That's a fairly remarkable statement. Because what it suggests is that the court should look at the general purpose of a contract and ignore the fine print. But that is exactly how you interpret contracts, is by looking at the precise terms used. And Virginia courts have recognized that. Counsel, I didn't read the district court the same way you did. I thought the district court was just saying, I'm looking at all of the text, all of the fine print in these contracts. Whereas your position is that the entire sort of plain meaning inquiry should start and end with, you look at these two other insurance clauses and you ask one question and one question only, are they reconcilable? That's the whole of the analysis. And I understood the district court to be saying that's too narrow a take on the plain meaning of the contracts as a whole. And I would agree, you don't simply look at the other insurance clauses. But what you do have to do is look at the specific terms of the policy that would apply to this loss, to the facts giving rise to the loss. And as I mentioned before, when you do that, you see that our policy covers Mr. Hooper's permissive use of his parent's vote, but it only does so for that specific risk on an excess basis. And that's been recognized by the Virginia Supreme Court in the Continental versus State Farm case. Can I ask you a question, counsel? So you started with Horace Mann, which seems like a good place to start to me. And we held that because this true excess rule is so widely adopted, it's a consensus rule, for that reason alone, we said we would predict that West Virginia would adopt it. So I feel like we need some way to distinguish Horace Mann here. And I don't think that saying, well, Virginia applies this kind of basic interpretive canon that you look at the meaning of the contract is going to work because so does West Virginia and so does virtually every state. And yet they've all also adopted the true excess rule. So is there some other reason to think Virginia would not adopt that rule, would want to be an outlier on this point? Your Honor, that's a broad question I could spend the rest of my time answering. So let me try to be brief. It seems pretty important, right? It is. It absolutely is. Your best answer. It absolutely is. First of all, I'm not sure that Horace Mann is the practically universal rule. District court cited cases from 12 jurisdictions that have applied the rule, which is not exactly the majority. Moreover... Well, has anything changed since... I guess one way you might distinguish Horace Mann is if the status of the true excess rule has changed since Horace Mann. Has it, in your view, is there any reason to think it has become less universal? No, ma'am. But what I would say is that a number of states like Virginia and recognize that the Horace Mann rule has been around long before Horace Mann. It's been around for decades. The Fourth Circuit did not create that rule with Horace Mann. It simply adopted it on behalf of West Virginia. But no court in Virginia, no state court in Virginia has ever mentioned, much less adopted the Horace Mann rule, either before or after Horace Mann was decided. And they haven't done that because they've been very clear as the Nationwide versus Erie case decided in 2017. Mr. Johnson, they haven't rejected it either, or else you would have been telling us about that. That's correct. They've not rejected it. They've not adopted it. They haven't even addressed it. Because when you have a case in Virginia with conflicting other insurance clauses, the Virginia Supreme Court and various circuit courts have repeatedly noted, you have to look at the policy language to see if they can be reconciled. That is a different approach than the generalized classifications of the true excess rule. And the Nationwide case, which was decided in 2017, almost a decade after Horace Mann, the Virginia Supreme Court reiterated, and this is from page 340 of that opinion, and I'm quoting, in determining coverage priorities between escape or excess policies, normal principles of contract interpretation apply. We look to the contract to determine the specific risk that is covered. And that is why under Virginia law, and that's long been the case, going back decades, that that is how we handle these issues. The other case that I would direct the court's attention to is USAA versus Travers, 240 Virginia 214, a 1990 Supreme Court case. And the reason why I'm referencing that in response to Judge Harris's question is because one of the insurers in that case specifically urged the Supreme Court to adopt a general rule of insurance. In that instance, it was the general rule that the policy in place on an automobile comes in first, and the policy in place on a driver comes in second in terms of priority when there's an accident. Another general rule that frankly would be easy and convenient to apply in many cases. The Virginia Supreme Court rejected that. It explicitly said we won't resort to the general rule and looked instead at the specific language in the policies to determine which insurers covered the risks that were presented on the facts that were involved in that loss. And so for that reason, we don't think that Virginia would adopt the Horace Mann rule. It runs counter to decades of Virginia law in which we look to the specific policy language to determine what risks are being covered. And when we do that here, this comes to I think the second, and we mentioned this a moment ago, the second fundamental issue with the district court's memorandum opinion. The court wrote that because the society's homeowner's policy does not ensure the same level of risk as the federal policy, pro-radical sharing of the settlement burden would be inappropriate, end quote. That is incorrect, and it demonstrates the problem with using this shortcut under Virginia law. Both the policies cover Rand Hooper's permissive use of his parents' vote, and both do so only on an excess basis. So I think, and going back to the point about making sure you look at the specific language and discrete subsections were the words that Judge Locke used in her opinion. If you don't look at the specific, discrete subsections, there may not be coverage at all. You may have a policy that the general insuring intent is to provide liability coverage, but there's an exclusion that applies for the given facts that give rise to a loss or claim. So the first thing you do with any insurance question is look to the policy to see if the risk is covered, and if so, at what level. And that's the part of the analysis that the district court gave short shrift to because it opted instead to running short on time, safe from my rebuttal, but I'm happy to answer any questions. Otherwise, I'll see you before Mr. Weingartner. You've used all your time. Yes, ma'am. So may it please the court, my name is Doug Weingartner, and I represent federal insurance in this case. And not surprisingly, our position is that the horseman opinion, which reflects the nearly unanimous majority rule in every jurisdiction that's looked at it, should apply here and ought to apply here, and there is no reason why it not apply here. The horseman rule generally states that a true excess policy is secondary in priority to a primary insurance policy, even with respect to an incident for which the primary policy purports to make itself excess to any other available insurance. That is directly on point here because that's exactly what the society is trying to do. It is trying to posture itself as an excess policy when it is not. But I mean, it's not trying to posture itself as an excess policy. The policy language says exactly what Mr. Johnson's recited, and I guess I'm having, you recite the rule accurately. I've always struggled, I've been struggling with why that makes sense. What's the policy rationale for that kind of an exception to not looking to the contract language? I will answer that question, but first let me address some disagreement with the form of the itself. The rule does not ask you to not look at the contract language itself. The rule asks you to look at the entire contract language, not just the other insurance clauses. All primary insurance policies, almost all of them, have other insurance clauses where insurance companies try to arrange priority coverage among them. In fact, the nationwide case in 2017 that counsel cited earlier was a dispute between primary insurance policies dealing with other insurance clauses. That's the classic dispute. And the issue here is not the classic primary versus primary policy, but where you have a primary policy versus an excess policy. And the true excess rule says you cannot turn a primary policy into an excess policy simply by using the other insurance clause language. It is a primary policy, it is always a primary policy, and it only offers excess coverage under very limited special circumstances. I understand that, but I guess the question is, in this case, it's a very risk that is covered by that excess language, so why shouldn't we just simply read it literally? Well, first and foremost, the policy itself, and if you give me one moment to punch through the appendix, the watercraft coverage that is at issue here is listed on page 90 under one of the incidental liability companies. It is not identified as an excess coverage, and on page 90, where it covers watercraft, it uses the classic language connoting primary liability. This is a liability policy. This is a liability section of the policy. The other insurance clause comes afterwards on page 96 of the joint appendix, and that is where it says this watercraft insurance is excess over other valid and collectible insurance that applies to the client. So it is, the watercraft coverage is in the primary. It is excess only as to other and collectible insurance. Is it primary as to a permissive user of the watercraft? Yes. It's primary to everything. The watercraft coverage is primary with the exception of it is excess over other valid and collectible insurance. The term valid and collectible insurance, as we which was approved and adopted by this court in medical protective, the Jones versus Medox case said that that term valid and collectible insurance is a term of art or connotes other primary insurance. Valid and collectible is a synonym for other primary insurance. So this policy makes itself excess over other primary policies. It does not make itself excess over other excess policies. It is a primary policy. And that is where the broad intent ought to be and should be determined first before you even get into the situation of parsing the language of the other insurance clauses. Mr. Weingartner, can I ask a follow-up? But on your theory of this true excess rule, it wouldn't matter if the policy was acting as a policy with respect to the particular risk at issue, so long as it had components of primary liability that attaches to it, that is part of the policy, but then also purports to have an excess rule as an exception. That is not a true excess policy. That would not be considered to be a true excess policy and wouldn't be applied as such, regardless of the risk at issue. Is that right? I always hate to say never ever, but I think that is absolutely correct. You look at the broad intent of the policy languages, the broad intent of the defining insuring language before you look at and compare the contrasting other insurance clauses that may be in those policies. Here, and I can say this for another part of the argument, here, when you do compare and contrast the language in the other insurance clauses in the federal policy versus the society policy or the mutual policy, they are widely different. They are dissimilar. They are not nearly identical in effect at all. Under the second part of the rule with regard to this comparison of policy language, they are not mutually repugnant and the pro rata rule does not apply. When policy languages, the other insurance clauses are dissimilar, you can reconcile the language and determine from that who is primary and who is excess. When you go through that analysis... Counsel, just to clarify, I'm sorry, because it's hard for me. This is your alternative argument, right? Forget the true excess rule. We win even if you do go down the other path and compare and contrast, limit basically your question to whether these two clauses can be reconciled. So this is alternative to the true excess rule. Correct. And to that point, Ward case from the Virginia Supreme Court in 2012, it states the simple rule that insurance policies like other contracts must be interpreted in accordance with the intentions of the parties as gleaned from the words used in the document. And when the terms of the contract are according to its plain meaning. That is what the court was referring to and what your honor, Judge Harris, was referring to with regard to the broader intent of the policies. And that broader intent must be looked at first. And that's the logical basis upon which horseman floats. That's exactly what horseman says one ought to do. Let's look at the broader intent of the policies and determine what the intent of the parties actually was before we have to deal with parsing the language of other insurance clauses that may be in those terms. Here, that broad intent is gleaned from the plain language of the policy where the federal policy says it will pay only for covered damages in excess of all underlying insurance covering those damages. And that policy requires policyholders to maintain in full effect primary underlying liability insurance. The district court found that to show that the federal policy unambiguously covers only a loss on the exhaustion of underlying primary insurance and bears the hallmark of a true excess policy. The society policy is undeniably a homeowner's policy. It declares it to be a liability policy, including the watercraft coverage. And the other insurance clause that tries to turn it into excess only does so with regard to other primary policies. So, we are indeed comparing apples and oranges here, which is what horseman says you shouldn't have to do. A primary policy with an other insurance clause, whether it's an escape clause or an excess clause, is only effective as to other primary insurance policies with an escape or excess clause. Couch on insurance dealt with I'm sorry, one moment. Couch on insurance, which is cited in our brief for Couch on insurance. This is long before horseman was decided. As a rule, excess and umbrella policies are regarded as excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner or any escape clause. So, this is not just horseman creating a rule. This is the entire body of the general rule of the entire body of insurance law in general. And there are no cases cited in the briefs and no cases known to exist by itself in which Virginia has said anything adverse to the true excess rule, anything adverse to horseman. In fact, the way that rule works is entirely consistent with Virginia law, which requires one to look at the general intent of the insuring parties under the case I cited earlier. So, I think that answered, did that answer your question, Judge Giaz? It did, but I have a follow-up. Your colleague on the other side cited two cases, the Allstate case and the U.S.A.A. case, and he cited one or the other for the proposition that a way of interpreting contracts. And the case he cited had the proposition of an auto insurance policy that applied to both the automobile and to the insured. And he said that in that context, the Virginia courts would simply look at the language of the policy and not try to glean a general priority based on intent. So, can you talk about that? And Judge, I don't claim to be an expert in that case. However, my recollection of it is that it was in a posit. It doesn't deal with this issue whatsoever. It deals with primary policies involving automobile liability. And I think what the court was trying to say there was where one was arguing that a certain vehicle should always come first in terms of who has first coverage in competing primary policies. We're not going to create a general rule that this car always comes first here. That's completely dissimilar from and has no connection to this issue where you have you don't have the same public policy interests of motor vehicle coverage such as the omnibus clause and all those things that are required by I think it's with our situation other than in one circumstance, the court said we choose not to have a general rule here. We want to do it on a more case by case basis. That doesn't apply to this situation. And the nationwide case in 2017 that counsel cited to for the idea that the Supreme Court indicated that one should look to contract interpretation as between escape clauses and primary policies. And that principle that nationwide stands for is not controversial at all. It simply says where you have two primary policies with two competing other insurance clauses, you look at that language. That's all that case says. It did not involve this issue of excess policy versus primary policy. So okay. Andrew, I'm sorry. Go ahead. Yes, ma'am. Did I interrupt you, Judge Mons? No, Judge Diaz, I think has a follow up. Oh, no, no, I'm fine. Thank you. Go ahead. No, I was just gonna say, I think, you don't have to use all your time. If you have more to say, go ahead. I will. I will. I was told as a young lawyer, when a judge tells me that, that you ought to close your mouth. So I think I will close my mouth. I was told that too. But I'm not really telling you that you've won. I believe that the court understands the issues. And I stand by to answer any questions you might have. Okay, thank you. I don't think we have any questions. So Mr. Johnson, do you have any rebuttal? I do, Your Honor. And first, I appreciate Mr. Weinberger's brevity. I had a hearing in state court yesterday that should have taken about 15 minutes and it lasted an hour and a half. Lawyers reading cases to the court. So let me begin with the, I think, what is the fundamental point of our argument. And Mr. Weingartner said that just because a primary policy has another insurance clause, that doesn't make it access to an umbrella policy. And I want to be clear about something. We're not saying that the Mutual Assurance Society policy should be access to any primary liability coverage in general because it has another insurance clause. What we are saying is that with regard to this specific risk, to Judge Diaz's point, with regard to this specific risk of Mr. Hooper's permissive use of his parents' vote, that our policy only provides excess coverage. That's the starting point for this analysis. We provide the same coverage for the same risk at the same level as the federal policy in this case. And perhaps, Judge Harris, that is what distinguishes this case from Horace Mann. We're talking about not a general claim that our policy should always be access. I think that's exactly like Horace Mann. And this will actually help me. My understanding, but tell me if I'm wrong, is that your argument is limited to the argument that this true access policy rule, true access rule, should not apply. But if it did apply, if the rule from Horace Mann applied, then you are not arguing that the district court misapplied that rule, correct? I believe that's correct, Your Honor, if I understand your question. If Horace Mann and I'm pretty sure that's the whole point of Horace Mann, that we're not looking at a risk. We're not doing a risk by risk analysis. It doesn't matter that your access adds to one risk if you are not a true access policy. Isn't that the point of the rule? Ma'am, and that's the fundamental figure of the rule under Virginia law, because in Virginia, you have to look at the specific risk being insured. That's the starting point. Under all these cases under Virginia law, you have to look at the specific language of the policy to determine what risk is covered and at what level. And you think that is not the rule in West Virginia. West Virginia has a different rule. You don't look at what risks are insured. You just don't pay any attention to that. So that's why this is fine for West Virginia, but it won't work in Virginia. Your Honor, I think that question really boils down to whether this court properly forecast that West Virginia would adopt Horace Mann. I'm not aware of... So you think Horace Mann is wrong, but I'm trying to figure out if Horace Mann is right. If we were right in Horace Mann to say West Virginia, even though it has the exact same background contract principles as Virginia would adopt this rule, how can I distinguish that if Horace Mann was right? If Horace Mann was right in interpreting West Virginia law and forecasting West Virginia law... Right. Your Honor, I want to be candid. I don't consider myself an expert in West Virginia insurance law. I know Virginia insurance law. I don't know West Virginia insurance law. I don't know... Well, why don't you assume for purposes of this question that West Virginia law also says that they look at the plain meaning of the entire policy, that they would not neglect to look to see whether there is coverage in the first instance before they start talking about what's a true excess policy and what's not. Just assume they have the same background principles of interpreting insurance contracts. Then respectfully, I think the Fourth Amendment, the principles of federalism that I've mentioned at the outset. What I do know is that the Virginia line of Supreme Court cases is extremely clear that you have to look at the specific risks in these two policies and how they're covered to determine whether there's a conflict that can be reconciled or not. I also want to very briefly address Mr. Weingartner's point that valid and collectible means primary insurance. That cites to the Jones versus Medex case, which was District of Columbia law. Frankly, that would violate every concept of Virginia law of following the plain meaning of language and not inserting a term like primary in the phrase other valid and collectible. The Nationwide versus Erie case from 2017 dealt with a similar question and said that it's meaningless semantics to say that any insurance or any other insurance or other valid insurance somehow means something different. Here, the phrase other valid and collectible insurance in our policy certainly does bring us to the level of excess insurance. Because you cannot give effect to the federal policy without eviscerating the mutual insurance policy, the two policies are in conflict and mutually repugnant. I see that I'm out of time. If anyone has additional questions, I'm happy to answer them. Now, we thank you both for your arguments and I hope the next time we see you maybe it'll be in Richmond. I hope so too, your honors. Thank you very much. Thank you, your honor. Ask the clerk to adjourn court. This audible court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Albert Diaz, Pamela A. Harris